304 So.2d 528 (1974)
Wilma S. JONES et al., Appellants,
v.
CITY OF TALLAHASSEE, a Municipal Corporation Created and Existing under the Laws of the State of Florida, Appellee.
No. V-333.
District Court of Appeal of Florida, First District.
December 5, 1974.
*529 L. Ralph Smith, Jr., of Smith & Moore, Tallahassee, for appellants.
Bryan W. Henry, Tallahassee, for appellee.
MASON, Associate Judge.
This is an appeal from a final judgment rendered by the Circuit Court of Leon County based upon a verdict in an eminent domain proceeding wherein the appellee City was petitioner and the appellants, Jones and Sticklands, were defendants. In its petition the City sought to acquire "a perpetual easement for electric transmission purposes" in the property of appellants described in Parcel 15 set forth in the petition. The case is before us on a stipulated statement of facts.
A chronological statement of the proceedings in the trial court is essential to our proper disposition of the points on appeal herein. The petition was filed on June 1, 1972, following the adoption of the City Commission in February, 1972, of a resolution setting forth the necessity for the acquisition of such easement. It is stated in such resolution that "it is necessary for the best interest of the City of Tallahassee to acquire a permanent easement for the lawful public and municipal purpose of construction, operating, and maintaining electric transmission lines and appurtenances which would benefit the public", across certain property owned by these appellants and located in Leon County. The City Attorney was directed to acquire said easment by eminent domain or condemnation proceedings in the name of the City. The petition filed by the City Attorney in pursuance of said resolution states that the City seeks to acquire "a perpetual easement for electric transmission purposes" in the lands of the appellants described in the petition.
Simultaneous with the filing of the petition, the City filed a declaration of taking, pursuant to Chapter 74, F.S., by which it sought possession of the easement in advance of entry of final judgment. Estimate of values as set forth in the declaration for such easement interest was $13,625.00. Appellants answered the petition demanding full compensation, specifically to include the value of the land taken *530 and severance damages to the remainder resulting from the taking. The trial court entered an order of taking conditioned upon the City depositing the good faith estimate of value into the Registry of the Court within 20 days, stating that upon the filing of such deposit the petitioner "shall be entitled to possession of the property described in the petition." Such deposit was made within the prescribed time and the interest sought to be acquired was thereby vested in the City.
Subsequently appellants filed a motion with the Court seeking the right to open and close the trial proceedings, including voir dire examination of the jury panel, opening statement, presentation of testimony, and closing argument to the jury. The refusal of the trial court to grant this motion constitutes the basis of one of the three assignments of error and one of the two points on appeal herein.
On November 1, 1973, appellee filed a motion to amend its order of taking seeking to amend Paragraph III of the petition which is the paragraph stating the interest sought to be taken. Such proposed amendment states:
"The estate or interest sought to be condemned by these proceedings is a perpetual easement for constructing, operating, and maintaining electric transmission lines and appurtenances, reserving unto the defendants all uses and purposes not specifically herein taken or inconsistent therewith ..."
in the property described in the petition. Appellants contended that such amendment should not be allowed because it sought to change the estate sought to be taken and was proffered by appellee's attorney without prior resolution of the City Commission determining that such changed estate was necessary. Hearing was had by the trial court on this motion, as well as upon appellant's motion to open and close. On December 14, 1973, the lower court entered an order specifically denying appellants' motion to open and close and without either granting or denying appellee's motion to amend its order of taking, the court entered a pretrial order in which it interpreted such order of taking. Such interpretation had the effect of the trial court declaring the nature and extent of the estate taken by the order of taking. The Court stated:
"The easement taken is for the purpose of construction and maintenance of electric transmission line and appurtenances. The appurtenances are those reasonably necessary to construction and maintenance of transmission lines at high tension, and not including location of substations."
The court also by such pretrial order held that,
"The easement taken shall consist of the right to construct and maintain the power line and do all things necessary for the construction, maintenance, and operation of that power line, including the right to pass over any land of the landowner within the limits of easement, but the exercise of those rights must be reasonable in the light of the use of the property by the landowner.
The landowner has the absolute right to cross, recross, graze and cultivate the easement, so long as what he does does not interfere with the reasonable activities of the City in the construction, operation and maintenance of the transmission line.
Activities of the landowner may be such that the City would be precluded from using a portion of the easement as a means of travel along the easement so long as a thoroughly adequate area to meet the needs of the City is available to the City and is reasonably located; but the landowner may not utilize its land in such a way as to preclude the City from properly constructing, maintaining, and guying its power lines and poles.
The damages to be awarded are to be based upon the contemplated use of *531 property, taking into account present plans of the City and future expansion of the transmission facilities either by larger poles or towers or construction of additional transmission lines."
The Court then stated, inferentially, that the jury would be instructed that in considering the value of the easement taken, it should consider "What does the City have the right to do? and what weight would a reasonable buyer and a reasonable seller put upon that right?"
Based upon this pretrial order a jury trial was held in which the City opened and closed the proceedings. Valuation testimony was presented by the City's appraiser who testified that the rights taken by the City had a value of 75% of the fee simple value of the parcel of land involved. The landowner's expert testified that such rights taken had a value of 90% of the fee simple value. Appellants' state that had not the trial court so interpretated the nature and extent of the property rights taken as it did do, its expert would have testified that the value of the easement taken was 100% of the fee simple value. A verdict was returned in the amount of $63,200.00. Based upon the Court's interpretation of the nature and extent of the property rights taken, and its instructions to the jury, there was no award of severance damage to the landowners' remainder.
Appellant contends that the trial court erred in its interpretation of the order of taking by failing to hold that the easement appropriated by the City was tantamount to the taking of the fee simple estate. We find this contention to be without merit. It is clear from a perusal of the City's resolution declaring its necessity to acquire property for the construction, operation and maintenance of electric transmission lines and appurtenances that as to these appellants' property only a permanent easement across the same was sought to be acquired, while as to certain other property owned by other landowners it was declared necessary that the fee simple estate be acquired. The difference in the nature and extent of the rights to be acquired as to these separate properties was due to the fact that as to the other landowners it was determined that it was necessary to build upon the property to be acquired from such other landowners a transmission substation, while as to appellants' property it was determined that only transmission lines and appurtenances thereto would be constructed and maintained upon and over such property.
The trial court in its pretrial order interpretating the order of taking specifically held that as to appellants' property the City was entitled only to an easement "for the purpose of construction and maintenance of electric transmission line and appurtenances" and that there was left to the landowner by the taking "the absolute right to cross, recross, graze and cultivate the easement, so long as what he does does not interfere with the reasonable activities of the City in the construction, operation and maintenance of the transmission line."
Historically in the jurisprudence of this state, there has always been a distinct difference in the character of an easement as distinguished from a fee simple estate. As early as 1883, in the case of Woodberry v. Matherson, 19 Fla. 778, at page 785, our Supreme Court said:
"The word fee simple denotes an estate of inheritance, or an estate without condition or restriction. The owner of such an estate has the sole power to control and dispose of the same without let or hindrance. It is an absolute estate in perpetuity, and the largest possible estate a person can have."
While in Burdine v. Sewell, 92 Fla. 375, at page 384, 109 So. 648, at page 652, the Court said with reference to the term "easement,"
"An easement has been defined to be `a privilege without profit, which the owner of one tenement has a right to enjoy in respect to that tenement in or over the *532 tenement of another person, whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former'," citing Jones on Easements, Sec. 1.
Black's Law Dictionary, Revised Fourth Edition, defines "easement" as
"A right in the owner of one parcel of land, by reason of such ownership, to use the land of another for a special purpose not inconsistent with a general property in the owner."
and
"The land against which the easement or privilege exists is called the `servient' tenement, and the estate to which it is annexed is called the `dominant' tenement; and their owners are called respectively the `servient' and `dominant' owner. These terms are taken from the civil law."
A "fee simple" estate on the other hand is defined by Black, page 742, as
"An absolute or fee-simple estate is one in which the owner is entitled to the entire property, with unconditional power of disposition during his life, and descending to his heirs and legal representatives upon his death intestate."
Applying these definitions of "easement" as contrasted to "fee simple estate" to the facts sub judice it is clear that the character of the estate acquired by the City was an easement, not a fee simple one. The resolution of the City Commission, the order of taking, and the trial court's interpretation of such resolution and order of taking clearly indicate that the City acquired nothing more than a perpetual easement for electric transmission purposes over the owners' land, with the right left in such owners to use their land in any way they choose, so long as such use does not interfere with the reasonable activities of the City in the construction, operation and maintenance of the transmission line.
The easement acquired by the City by its very nature does not require the exclusive occupation of the surface of the land over which the transmission line would be constructed. The landowners retain the absolute right to use the fee in any manner they choose consistent with the City's right to use the land in "the construction, operation and maintenance of the transmission line." All that the trial court's pretrial order did was to spell out with specificity what the City could do as owner of the easement and what the fee holders (appellants) could do as owners of the fee estate. Such interpretation of the order of taking by the trial judge is consistent with his obligation to instruct the jury as to the nature of the estate acquired by the City and the nature of the estate left the landowners.
It is true that under certain circumstances the use of an easement can be tantamount to a deprivation of the owner's use of the fee, particularly where such easement use for all practical purposes prevents the owner from any profitable use of the remaining fee. Where this is evident, then the landowner is entitled to compensation as for the taking of the fee simple title. Such was the case in Smith v. City of Tallahassee, Fla.App., 191 So.2d 446, relied upon by appellants. There the City's proposed use under its easement was the construction and operation, as part of its drainage system, over, under and across the owners' land, of a thirty foot ditch. Such construction and use would deprive the landowners of all practical and profitable use of the remaining fee. There the Court held that such easement use entitled the owners to compensation as for the taking of the fee simple title. But in the case sub judice the effect of the taking, under the trial court's interpretation of the order of taking, is to limit the City to transmission line operation, with reasonable appurtenances, over appellants' property, leaving to them substantial use rights in the land. This being true, the appellants are not entitled to recover the entire market value of the land subject to the easement, and the trial court was correct in *533 limiting damages to the value of the easement taken. The jury's award of damages was in line with such appropriate measure of damages.
The second point on appeal argued by appellants for reversal herein is the refusal of the trial court to grant their motion to open and close both the evidence and argument in the trial proceedings. The basis of their argument is that since this proceeding is one brought under both Chapters 73 and 74, F.S., wherein an order of taking was entered by the trial court conditioned upon the deposit by the City into the Registry of the Court of the estimate of value filed as required by Chapter 74, there rested a burden upon the owners of the property, who were seeking additional compensation over and above the amount of the City's estimate, to establish such additional compensation. They further argue that had they adduced no evidence that full compensation to them was more than the estimate filed by the City, then they would not have secured such additional compensation.
This question has been considered by two of our sister district courts of appeal and they have reached diametrically opposite conclusions. The Second District Court of Appeal in Parker v. Armstrong, Fla., 125 So.2d 138, held that in a condemnation case the condemning authority has a duty to go forward with the evidence so that the jury may determine the value of the property taken before a judgment may be obtained on the question of damages. This case was decided under Article XVI, Section 29, of the 1885 Constitution of Florida, which held that no private property shall be taken for the use of any corporation or individual until full compensation shall be first made to the owner, or first secured to him by deposit of money, such compensation to be fixed by a jury of twelve men in a court of competent jurisdiction. The Court reasoned from this initial premise that before a judgment of condemnation can be rendered in behalf of a petitioner such petitioner must proffer evidence as to the value of the property taken. The burden is upon such petitioner to proffer such proof, failing which the suit would have to be dismissed. No burden, in the view of the Court in Parker, rests upon the landowner to come forward with proof of value until the petitioner has first met its burden of establishing value. This view is founded upon the premise that the true test of the right to open and close is based upon the answer to the question, which party would lose if no evidence were presented? The Court held, in effect, that the condemning authority would be the loser if no evidence of value was presented because in such event the suit would be dismissed and the property returned to the owners, even though an order of taking had been entered.
The District Court of Appeal for the Fourth District in Rice v. City of Fort Lauderdale, Fla.App., 281 So.2d 36, decided in 1973, reached just the opposite conclusion. The reasoning of the Court in Rice was that since the proceeding was brought under the "quick taking" mechanism provided in Chapter 74 and the condemning authority secures title and right of possession by the deposit of the amount of the estimate of value into Court, the burden shifts to the owner to show that the estimate does not represent full compensation, and that because of such shifting of the burden of proof, the owner should, therefore, have the right to open and close.
Both holdings, that of the Second and that of the Fourth Districts, are supported by respectable lines of authority from other jurisdictions. However, we believe the holding in the Parker v. Armstrong case to be the correct and better reasoned authority and we, therefore, follow the reasoning of the Second District and hold that the trial court did not err in denying to appellants the privilege of opening and closing.
The Rice case was decided under the provisions of the 1968 Constitution of Florida. Article X, Section 6 of the *534 present Constitution provides that "no private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner." There is no fundamental difference between this provision of the 1968 Constitution and the provisions of the 1885 Constitution insofar as they, respectively, place an obligation upon the condemning authority to pay full compensation as a predicate to its right to take private property. Under both constitutions without the determination of full compensation the property cannot be taken and the burden is obviously upon the condemnor to present evidence of such full compensation, failing which it cannot take the property. And this burden of the condemnor is not met simply by making an estimate of full compensation and depositing the same into Court. Section 74.081 of Chapter 74, the so-called "quick taking" chapter, specifically provides that neither the declaration of taking, nor the amount of the deposit, shall be admissible in evidence in any action. Section 74.061 of this Chapter provides that after the deposit of the estimate is made, title shall vest in the petitioner, "and the right to compensation for the same shall vest in the persons entitled thereto." And that "compensation shall be determined in accordance with the provisions of Chapter 73 ..." (italics ours).
Section 73.071 provides that when the condemnation action is at issue the Court shall empanel a jury of twelve persons and shall submit to such jury the issue of compensation for determination. Since the petitioner cannot prevail under the Constitution until it pays full compensation for the property, and inasmuch as neither the declaration of taking, nor the amount of the deposit may be used as evidence in the case, there is no way for the petitioner to prevail without first producing evidence of the value of the property before the jury. If no such evidence is produced by petitioner the suit would have to be dismissed and the order of taking rescinded. Therefore, to prevail the petitioner must first carry the burden of producing evidence of value  of full compensation  following which, of course, the owners may offer evidence to sustain a higher award than one based solely on the petitioner's evidence.
We held in Culbertson v. State Road Department, Fla.App., 165 So.2d 255, decided in 1964:
"There can be no taking of private property for public use without full compensation to the owner ascertained by a jury of twelve men in a court of competent jurisdiction. Article XVI, Section 29, Constitution of Florida, F.S.A. This comprehends that initially the duty of proceeding and the burden of proof rests on the condemnor to establish, as of the date of taking, the amount of the damages  `full compensation'  to be paid in the premises. There is nothing, therefore, for the landowner to rebut until he is faced with competent testimony on the part of the condemning authority ..."
There the issue was whether the testimony of the petitioner's one appraiser as to value made some four months prior to the date of the taking was competent testimony on the issue of value. This Court held that such testimony as to value at such time was incompetent and should have been stricken by the trial court, leaving only in evidence the testimony of the owner's experts for consideration by the jury. Such decision is not a conclusive declaration by our predecessor brethren on the particular issue sub judice, but it does indicate that this Court has stated the principle that the burden of proof in a condemnation proceeding rests initially with the petitioner.
Our holding is in line with the traditional rule in Florida that the condemnor has the right of opening and closing.
Finding no error in the rulings of the trial court, we hold that the judgment below should be affirmed. However, we are of the opinion that the question as to which party has the right to open and close *535 in a condemnation suit is of such great public interest that the issue should be set at rest by our Supreme Court. Therefore, pursuant to Section 3 of Article V of the Constitution of the State of Florida, we certify this case to the Supreme Court.
Affirmed.
McCORD, Acting C.J., and JOHNSON, J., concur.