MOE, LEROY H., Associate Judge.
This is a condemnation case in which the land owners are appealing a jury verdict and judgment entered thereon awarding them $27,000.00 for the land condemned.
The appellee filed a complaint pursuant to the “quick take” provisions of Florida Statute Chapter 74, seeking an easement 265 feet wide across the middle of the appellants’ 80-acre tract of land for the purpose of building, operating and maintaining power lines. An Order of Taking was issued prior to trial, and the appellee acquired its easement by depositing the necessary funds into the Registry of the Court.
The 80-acre tract of land through which the appellee sought its easement was being used by the appellants as a rock and sand quarry. The appellants’ Answer alleged that the strip of land sought to be condemned would be wider than the proposed 265 feet, since the appellants would have to provide lateral support for the easement to keep it from collapsing due to the dredging operations that would be continued near the easement, alleged that they would suffer consequential damages because of the increased cost and inconvenience of operating a quarry on a bisected tract of land, and challenged the appellee’s assessment of the value of the land sought to be condemned.
*156 A pre-trial conference was held and both sides to the controversy filed written pretrial memorandums. Unfortunately for the purposes of this appeal, the pre-trial conference was not transcribed nor did the trial judge enter a pre-trial order in accordance with F.R.C.P. 1.200(c).
The appellants urge four points on appeal. The first point alleges that the appellants are entitled to opening and closing argument in a “quick take” condemnation action brought by a public utility. The trial judge denied the appellants’ request, relying on the case of Parker v. Armstrong (Fla.App.2d, 1960), 125 So.2d 138.
The appellants cite Rice v. City of Fort Lauderdale (Fla.App.4th, 1973), 281 So.2d 36, in support of their position. In that case, the Fourth District Court of Appeal held it was reversible error for the trial court to refuse the land owner the right to open and close to the jury in a “quick take” condemnation action brought pursuant to Florida Statutes Chapter 74, and remanded the case for a new trial on that basis.
However, the Supreme Court of Florida granted certiorari in the Rice case (City of Fort Lauderdale v. Casino Realty, Inc., S. A. Rice et al., Fla., 313 So.2d 649) and in the concurring opinion written by Justice Overton, the Supreme Court recognized the conflict in the District Courts of Appeal caused by the Rice and Parker cases, supra, and held that “under certain circumstances” the land owner was indeed entitled to opening and closing argument in a condemnation proceeding.
The “certain circumstances” were summarized as follows:
“Compensation in condemnation proceedings in this state includes both usual and unique items of damage. The burden of proof varies depending on the specific item of damage. The items of damage in a condemnation proceeding in this state and the party that has the burden of proof are set forth as follows:
Item of Damage
1. Value of the land taken
2. Damage to the land remaining or severance damages
3. Special enhancement to remaining land by improvement
4. Moving expenses
5. Business loss
Party Who Has the Burden of Proof
Condemning authority
Property Owner
Condemning authority
Property owner
Property owner”
An analysis of this case for the purpose of applying the facts and proceedings to the holding quoted above may be beneficial to the parties now before the Court, but is unnecessary since the Florida Supreme Court also stated in its opinion:
“To avoid multiple retrials, this holding is for prospective application only and shall not affect any cause upon which jury trial has commenced or verdict has been rendered, irrespective of whether this issue was properly raised before the trial of that cause.”
We therefore hold that the trial judge did not commit reversible error in refusing to grant the appellants’ request for opening and closing argument to the jury in this case.
*157 The last two points on appeal were succinctly stated by the appellee as follows:
“II. WHETHER THE TRIAL COURT PROPERLY EXCLUDED ATTEMPTS BY WHITEHEAD TO SHOW THAT THE REMAINDER OF HIS LAND COULD NOT BE USED AS A ROCK PIT ON THE GROUND THAT SUCH ISSUE HAD NEITHER BEEN RAISED IN THE PLEADINGS NOR MENTIONED AT PRETRIAL CONFERENCE. (APPELLANTS’ POINTS II and III).
III. WHETHER, WHEN WHITEHEAD CHOOSES TO OPERATE A BISECTED ROCK QUARRY AS A SINGLE QUARRY INSTEAD OF TWO QUARRIES, THE COSTS OF SUCH OPERATION ARE PROPERLY CLASSIFIED AS BUSINESS DAMAGES. (APPELLANTS’ POINT IV).”
In order to resolve these issues, it is necessary to analyze and discuss the pre-trial and trial proceedings.
After selecting a jury, the appellee put on its one witness, a land appraiser, introduced certain items of documentary evidence, and then rested. During cross examination of this witness, the appellants attempted to prove that the business of dredging sand and rock for fill being conducted on their land would be damaged by condemning a strip of land running down the middle of the land. The specific items of damage alleged were moving equipment (specifically a large dragline) from one side of the bisected tract around the easement to the other side, installing a new pumping station on one side of the easement, the added cost of electricity for running the new pump, plus other costs attendant to operating in effect two quarries instead of one. Obviously, all of these elements of damage claimed by the appellant specifically related to their continuous use of the land as a sand and rock quarry after the condemnation in much the same manner as they were doing before the condemnation. It should also be mentioned that the appellee’s witness testified on direct examination, with no objection, and on cross examination, that the highest and best use of the land in question was as a pit or strip mining of rock and sand.
The appellee objected strenuously to the introduction of testimony and evidence relating to those items of damage mentioned above claiming they were “business damages” and as such were inadmissible because they had not been pled by the appellants and “they (the appellants) have not been in business for five years.”
The appellants admitted they were not entitled to “business damages” for the reasons cited by the appellee, but claimed that these specific items of damage were “severance damages” or “cost to cure,” not business damages.
After hearing strenuous argument on this issue from both sides (out of the presence of the jury) considering the applicable law and allowing the attorneys for both sides ample opportunity to support their positions, the trial judge ruled that “the cost of the pump and the moving of the dragline (are) business damages,” and sustained the appellee’s objection.
This Court has considered the entire record on appeal, the applicable law and the reasoning of the trial judge in sustaining the appellee’s objection, and after careful consideration of all factors, combined with the presumption of correctness on appeal of trial court rulings in discretionary matters, we fail to find that the trial court committed reversible error in excluding the testimony and evidence sought to be introduced by the appellants.
The appellants’ first witness was called to rebut the appellee’s expert’s testimony as to the value of the land being condemned and to give his opinion of its value. However, the witness could not qualify as an expert land appraiser. The appellants therefore sought to have him qualified as *158 an expert in the field of operating a rock and sand quarry, and the Court did indeed recognize him as such.
The appellants then attempted to elicit testimony from the witness to the effect that it was not feasible to use the remaining property for a rock pit operation after the powerlines and other structures were built, and on cross examination gave two specific reasons for his opinion, one being the alleged impossibility to blast with dynamite because of the existence of the pow-erlines.
At the close of this witness’ testimony, the appellee moved to strike the portion relating to the inability to blast on the basis of an insufficient factual predicate to support his opinion. The Court denied the motion and recessed the trial until the following day.
When the proceedings resumed the next day, the appellee renewed its motion to strike. During argument on the motion, the appellants stated that the purpose for introducing the testimony was to show that the land would be worthless for rock pit purposes after the condemnation. The ap-pellee alleged “surprise,” because that issue had never been pleaded or discussed at the pre-trial conference as an issue in the case.
The argument on the motion to strike then dissolved into an argument concerning the right of the appellants to offer testimony and evidence that the remaining property could not be used as a rock pit. The Court ruled on the motion as follows:
“I’m going to grant your motion, and I’m going to get on the record why.
This thing has been pending for nearly a year now. At the pretrial conference a while back it was not raised as an issue by the — I mean the inability to use the remainder as a rock pit. It was discussed that the parties would agree on a slope off the easement to provide lateral support for further digging that was going on; that they intended to carry on and the reason they needed the support was stated by counsel for the land owner.
The reason they needed the slope was so their appraiser would be prepared to testify as to damages in view of this amount of lateral support that had to be left. That led the Petitioner to believe that any testimony about the change in highest and best use to the remainder, or stated another way, that the remainder couldn’t be used for a rock pit would not be an issue in the case. It was not injected as an issue in the case until the Court’s ruling that a new purpose and moving the dragline around the power-line three or four times, the testimony showed, would not be in the nature of severance damages, it would be more in the nature of business damages, the land owner took an entirely different approach to it and did catch you by surprise.
The fact that you didn’t depose his witness, even though you knew who he was, I don’t really consider too important because it’s up to you to depose and not to depose. You might want to spend the money or not. That is your choice. I don’t know.
The Petitioner did say that he talked to the man and the man did make no mention about blasting or inability to use the remainder for a rock pit.
However, I am not basing the ruling on that. I’m basing the ruling on the total surprise. It couldn’t have been anticipated a long time ago and was only sought to be raised in the middle of the trial.
Let’s go.”
The jury was instructed accordingly.
With the clarity that hindsight affords, it is suggested by this Court that the better practice is to have pre-trial conferences reported and transcribed if necessary, or to have all matters discussed, resolved and confirmed by an Order of the *159 Court, or both. Compliance with F.R.C.P. 1.200(c),[1] would have precluded much of the controversy that is the subject matter of this appeal.
However, this is not a case of actus curiae neminem gravabit[2] but rather a case of the trial Judge doing what should have been done albeit a bit late. We fail to find that the Court’s ruling as set forth above prejudiced the appellants, and we therefore fail to find reversible error on this point.
For these reasons, the judgment is affirmed.
BOARDMAN, Acting C. J., and GRIMES, J., concur.

. Pretrial Order. The Court shall make an order reciting the action taken at the conference, the amendments allowed to the pleadings and the agreements made by the parties about any of the matters considered and limiting the issues for trial to those not disposed of by admissions or agreements of the parties. The order shall control the subsequent course of the action unless modified at the trial to prevent injustice.

. An act of the court should prejudice no one. Where any delay in a suit is caused by the court neither party should suffer for it.