DOWNEY, Judge.
Belvedere Development Corporation and Colonnades, Inc., two of numerous defendants in an eminent domain case, appeal from a final judgment, entered pursuant to a jury verdict, that awarded them $2,385 and $15,800, respectively, as the value of the land taken.
As part of the project involving construction of a new bridge across the intereoastal waterway from Blue Heron Boulevard to Singer Island, the Division of Administration, State of Florida Department of Transportation, and Palm Beach County on September 8, 1972, filed a complaint in eminent domain to condemn various parcels of real property. Belvedere and Colonnades were named as the owners of two parcels (parcel 111 and parcel 110, respectively) sought to be condemned. The complaint, which contained the legal description of each parcel, demonstrated the parcels were riparian lands and further provided that
the rights to use and enjoy the riparian rights of and pertaining to said lands, including the rights to bulkhead and fill, said lands as provided by law, which are not in conflict with the interests of the Florida Department of Transportation in the construction and maintenance of said public highway
were reserved to Belvedere and Colonnades. On November 15,1972, the court entered an order of taking that included the above quoted reservation of riparian rights to Bel-vedere and Colonnades.
*849 On June 27, 1979, the cause came on for jury trial on the sole question of the amount to be paid Belvedere and Colonnades as full compensation for the land taken plus damages to the remainder. During the course of the trial the condemnor-appellees’ appraisal expert testified that appellants would suffer no severance damages because a) the rights reserved to the appellants in the order of taking indicated that no riparian rights were taken from either parcel, and b) neither appellant would suffer any economic detriment as a result of the takings. The appellees’ expert also testified that full compensation due appellants for the taking of parcels 110 and 111, as of December 4, 1972, was $6,550 and $1,400, respectively.
The property owner-appellants’ first expert appraisal witness, Samuel Holden, testified that the total compensation due Colonnades for the taking of parcel 110, as of December 4, 1972, was $106,042. Five percent of that amount was compensation for the loss of riparian rights. He also testified full compensation due Belvedere for parcel 111, as of December 4, 1972, was $27,638; $7,259 of that sum was for loss of riparian rights.
Appellants’ second expert appraisal witness, Roy Smith, testified that the salvage damage (which included the loss of riparian rights) resulting from the taking of parcel 110 was $108,880, and the total loss resulting from the taking was $138,880. As to parcel 111, the loss of riparian rights amounted to $24,195, with the total loss resulting from the taking being $44,535.
The jury returned verdicts finding that (1) the compensation awarded to appellant Colonnades was $15,800 for the value of the land taken (parcel 110) and $0 for severance damages, for a total award of $15,800; and (2) the compensation awarded to appellant Belvedere was $2,385 for the value of the land taken (parcel 111) and $0 for severance damages, for a total award of $2,385. The trial court entered final judgments pursuant to the verdicts and this appeal followed.
Of the seven points raised on appeal only one really warrants any extended discussion. Appellants’ first point presents the following question: “May riparian rights be enjoyed by an owner of non-riparian land?” Appellants do not propose a direct answer to the foregoing question; however, they appear to argue the answer should be “no” on the grounds that riparian rights are inseparable from riparian lands. They further argue that once the appellees condemned and took appellants’ riparian lands they (appellees) also necessarily took appellants’ riparian rights, and so appellants, as a matter of law, must recover compensation from the appellees for the taking of those riparian rights.
Appellants cite numerous eases from Florida and other states to support their position. In turn, appellees cite numerous cases in support of their position that (a) riparian rights are severable from riparian lands, and (b) appellees’ reservation of riparian rights to appellants precludes appellants from recovering any compensation for loss of riparian rights since appellants did not lose such rights.
Appellants cite no Florida case that holds riparian rights may not be severed from riparian lands. However, Burkart v. City of Fort Lauderdale, 168 So.2d 65 (Fla. 1964); Peebles v. Canal Authority, 254 So.2d 232 (Fla. 1st DCA 1971); and 78 Am.Jur.2d, Waters § 278, contain statements that support appellees’ position. See also Capies v. Taliaferro, 144 Fla. 1, 197 So. 861 (1940), and Padgett v. Central & Southern Fla. Flood Con. Dist., 178 So.2d 900 (Fla. 2d DCA 1965). We have also considered Section 197.315(3)(a), Florida Statutes (1971), which appears in the 1979 statutes as Section 197.228(1). That statute purports to define riparian rights in a fashion supportive of appellants’ contentions. However, the historical location of that statute within a chapter on taxation and the major thrust of the content of the original legislative enactment of the statute (Chapter 28262, Laws of Florida (1953)), lead us to conclude that Section 197.-315(3)(a), and its lineage are taxation statutes rather than statutes that describe substantive property rights. The checkered *850 history of Section 197.228, Florida Statutes (1979), and the problems it has created in the determination of water rights is recounted in Maloney, Plager & Baldwin, Water Law, § 22.3. Because of the dubious effect of said legislative act upon the question presented in this case we hold it to be inapplicable.[1]
Since the only Supreme Court decisions relevant to this case (Burkart, supra, and Capíes, supra) support appellees’ position, we are constrained to follow those decisions. Hoffman v. Jones, 280 So.2d 431 (Fla.1973). In addition, the following cases from other jurisdictions support appellees’ position: Mianus Realty Company v. Greenway, 151 Conn. 128, 193 A.2d 713 (1963); Williams v. Skyline Development Corporation, 265 Md. 130, 288 A.2d 333 (1972); Commonwealth, Marine Resources Com’n. v. Forbes, 214 Va. 109, 197 S.E.2d 195 (1973). Accordingly, we' hold that appellees had the authority to take appellants’ land while reserving to appellants the riparian rights of that land.
Peebles v. Canal Authority, 254 So.2d 232 (Fla. 1st DCA 1971), presents a contrasting factual situation that emphasizes the importance of the reservation of rights in the present case. In Peebles the condemnor acquired the fee simple title to the property taken without in any way limiting the estate or use involved. Thus the court held it was not proper for the condemnor’s appraiser to take into consideration the condemn- or’s allowance of access to the river based on the condemnor’s usual policy of allowing such access. In that regard the court stated:
It is established law that privileges in the property taken, (in this case, access to a body of water) the enjoyment of which is not compatible with the exercise of the title taken (here, a fee simple absolute) by the condemning authority, cannot be considered in awarding compensation unless they are formally established by the condemnation proceeding. Privileges .. . which are merely permissive and subject to revocation by the condemning party at any time cannot be availed of in reduction of damages. 4, Nichols on Eminent Domain, § 12.41(2); Smith v. City of Tallahassee, 191 So.2d 446 (Fla.App. 1st, 1966). Any restriction on the extent of the taking should be stipulated in the petition and the Order of Taking, for the condemnor is bound by these instruments. Houston Texas Gas & Oil Corporation v. Hoeffner, 132 So.2d 38 (Fla.App.2nd, 1961). 254 So.2d at 233 (Emphasis added.)
Following the lead of the Peebles case, the condemnor here made it clear in the petition that the riparian use of this property was reserved to the owners except only as it might conflict with the limited interests of the D.O.T. in the construction and maintenance of the highway. The order of taking also followed Peebles in specifying that the riparian rights were reserved to the owners.
Consequently, our study of this case leads us to the conclusion that the jury award was correct. The condemnor-appel-lees’ reservation of the riparian rights to the property owner-appellants, together with the evidence adduced was sufficient for the jury to determine the valuation issues between the parties. And the determination of those issues was the jury’s function. 21 Fla.Jur.2d, Eminent Domain § 136.
For the reason set forth above, we also conclude that appellants’ argument relative to jury instructions is without merit.
 Two other points raised by appellants have to do with asserted procedural *851 errors during the trial. Neither has merit. The trial judge advised the jury as they were departing the jury box to deliberate that, if they were unable to readily arrive at a verdict, they would probably have to return the next day. They did not arrive at a verdict that night; however, when they returned the next day, they did so. Appellants contend that the judge’s comment had the effect of an “Allen Charge”, which resulted in coercing the jury into arriving at a hurried verdict. We disagree. No error was apparent. The other point involved a juror who, as he was leaving the jury box, asked the clerk the whereabouts of the deed that transferred appellants’ title to the D.O.T. The trial judge advised the jury there was no such deed in evidence. Everyone was milling around in the courtroom and it appears counsel was unaware of that colloquy. In any event, no harmful error is demonstrated in this regard.
Thus, having fully considered all of appellants’ contentions, we fail to find any reversible error, and we affirm the final judgment under review.
Because Florida is blessed with a great amount of riparian land, we hereby certify the following question, which we have answered in the affirmative, to be a question of great public importance:
Does Florida law permit riparian (or littoral) rights to be separated from riparian lands?
AFFIRMED.
LETTS, C. J., concurs.
HERSEY, J., concurs specially.

. Section 197.315(3)(a) was in effect at the time of the taking (November 15, 1972); thus we discussed it because it is arguable that it had a bearing on appellants’ right to full compensation for the taking. We note that, as appellees point out, the repeal of Chapter 197, Florida Statutes (1971), by Chapter 72-268, Laws of Florida (1972), effective December 31, 1972, without a subsequent legislative reenactment of Section 197.315(3)(a), might well render Section 197.228(1) a nullity. See Sections 11.2421, 11.2422, 11.2424, Florida Statutes (1973); Massachusetts Bonding & Insurance Company v. Bryant, 175 So.2d 88 (Fla. 1st DCA 1975); 30 Fla.Jur., Statutes, § 72, p. 219.