476 So.2d 649 (1985)
BELVEDERE DEVELOPMENT CORPORATION, et al., Petitioners,
v.
DEPARTMENT OF TRANSPORTATION, DIVISION OF ADMINISTRATION, Respondent.
No. 62172.
Supreme Court of Florida.
July 11, 1985.
Rehearing Denied November 4, 1985.
William L. Coalson, of Greene, Greene, Falck & Coalson, Jacksonville, for petitioners.
Alan E. DeSerio and Margaret-Ray Kemper, Appellate Attys., and John H. Beck, Gen. Counsel, Tallahassee, for respondent.
ADKINS, Justice.
This cause is before us on petition to review the decision of the Fourth District Court of Appeal in Belvedere Development Corp. v. Department of Transportation, *650 Division of Administration and Palm Beach County, 413 So.2d 847 (Fla. 4th DCA 1982), in which that court certified the following question to be a question of great public importance:
DOES FLORIDA LAW PERMIT RIPARIAN (OR LITTORAL) RIGHTS TO BE SEPARATED FROM RIPARIAN LANDS?
413 So.2d at 851. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
This case commenced with the filing of a complaint in eminent domain by the Department of Transportation to condemn certain lands adjoining and contiguous to Lake Worth in Palm Beach County, Florida. The Department sought to acquire the property in fee simple absolute, with an express reservation to the landowners which provided:
Reserving unto the Defendant the rights to use and enjoy the riparian rights of and pertaining to said lands, including the rights to bulkhead and fill, said lands as provided by law, which are not in conflict with the interests of the Florida Department of Transportation in the construction and maintenance of said public highway.
The petitioners, Belvedere Development Corporation and Colonnades, Inc., answered the complaint in eminent domain alleging that the lands sought to be acquired by the state were only a portion of petitioners' lands and the taking thereof and the use to which they would be put would cause severance damages to the remaining adjoining lands of the petitioners.
The case went to trial and the jury returned verdicts finding (1) that the compensation awarded to petitioner Colonnades was $15,800 for the value of the land taken and $0 for severance damages, for a total award of $15,800; and (2) the compensation awarded to petitioner Belvedere was $2,385 for the value of the land taken and $0 for severance damages, for a total award of $2,385. The trial court entered final judgments pursuant to the verdicts and an appeal followed.
On appeal, the petitioners raised seven points. However, the district court found that only one issue warranted any extended discussion  whether riparian rights could be enjoyed by an owner of non-riparian land? The court's decision to uphold the jury's award was based on its conclusion that the only Florida Supreme Court decisions relevant to the issue supported the Department's position. 413 So.2d at 850 (citing Burkart v. City of Fort Lauderdale, 168 So.2d 65 (Fla. 1964) and Caples v. Taliaferro, 144 Fla. 1, 197 So. 861 (1940). The court also discussed a decision of our First District Court of Appeal, Peebles v. Canal Authority, 254 So.2d 232 (Fla. 1st DCA 1971), in which the condemnor acquired the fee simple title to the property taken without limiting the estate or use involved. The Peebles court held that it was improper for the condemnor's appraiser to take into consideration the condemnor's allowance of access to the river based on the condemnor's usual policy of allowing such access. The court stated:
It is established law that privileges in the property taken, (in this case, access to a body of water) the enjoyment of which is not compatible with the exercise of the title taken (here, a fee simple absolute) by the condemning authority, cannot be considered in awarding compensation unless they are formally established by the condemnation proceeding. Privileges ... which are merely permissive and subject to revocation by the condemning party at any time cannot be availed of in reduction of damages.
Id. at 233 (citations omitted).
The district court in the instant case found that the condemnor had made it clear in its petition that the riparian use of the property was reserved to the petitioners except insofar as it might conflict with the limited interests of the Department. The court also found that the order of taking followed Peebles and specified that the riparian rights were reserved to the petitioners. Accordingly, they found that the express reservation of rights, coupled with the evidence adduced at trial, was a sufficient *651 basis upon which the jury could determine its award. 413 So.2d at 850.
The petitioners argue that the attempted reservations of riparian rights by the Department in the legal descriptions attached to the order of taking are ineffective. They contend that a person or entity must own the lands bordering on navigable waters for there to be riparian rights; in other words, riparian rights are appurtenant to and are inseparable from the riparian land. Petitioners quote the following authority:
The source of riparian rights is ownership of dry land bordering or abutting on a navigable waterbody .. . riparian rights are an inherent aspect of upland ownership, and not severable from it. §§ 21.6 and 34.3, Maloney, Plager and Baldwin, Water Law and Administration, The Florida Experience, University of Florida Press, 1968.
In addition, they rely on the following language from Florida Jurisprudence to support their contention that the respondents have become the owners of the riparian rights appurtenant to these lands:
The land to which the owner holds title must extend to the ordinary high watermark of the navigable water in order that riparian rights may attach. Conveyance of title to or lease of the riparian land entitled the grantee to the riparian rights running therewith whether or not mentioned in the deed or lease of the upland. 34 Fla.Jur., Waters, § 126, et seq.
Because the petitioners' property was taken in fee simple absolute without an award for severance damages, petitioners argue in conclusion, a taking has occurred in violation of article X, section 6 of the Florida Constitution.
The respondent, the Department of Transportation, contends that Florida is among those jurisdictions that follow the majority rule that riparian rights may be devised separate from the lands to which such rights attach. In 1916 this Court stated:
A conveyance of land to which riparian rights to submerged lands are attached ... may carry the riparian rights, unless such rights are reserved or a contrary intent appears from the conveyance.
Panama Ice and Fish Co. v. Atlanta and St. Andrews Bay Railway, 71 Fla. 419, 423, 71 So. 608, 610 (1916). See also Burkhart v. City of Fort Lauderdale; City of Tarpon Springs v. Smith, 81 Fla. 479, 502, 88 So. 613, 621 (1921).
Implicit in the foregoing cases is the principle that riparian rights may sometimes be severed from the ownership of the land to which they attach. If this were not so, decisions which resolve how and to whom to allocate riparian rights would not even arise. There is nothing novel about the notion of finding a legal separateness of an incorporeal interest such as a riparian right. The law has long recognized the separateness of nonpossessory property interests, including incorporeal heriditaments and future interests.
However, we are persuaded by the concerns voiced by Judge Hersey in his special concurring opinion and agree that following this general rule in all situations often leads to rather absurd results. Judge Hersey stated:
[Riparian] rights basically include (1) general use of the water adjacent to the property, (2) to wharf out to navigability, (3) to have access to navigable waters and (4) the right to accretions.
How could it seriously be contended that appellants in this case retain any of those rights despite the language in the Order of Taking (the functional equivalent of a deed)? They have no easement or other retained rights to enter upon appellee's land. If a dock is built by appellants it will have to be free-standing, without contact with appellee's land. And how are they to "use" the water, say for swimming, when they have no access to it other than by boat? And consider the horrendous problem of accretions!
413 So.2d at 851.
In 1917 this Court defined riparian rights in Thiesen v. Gulf, Florida and Alabama Railway, 75 Fla. 28, 78 So. 491, 507 (1917):

*652 Riparian rights we think are property, and being so the right to take it for public use without compensation does not exist. The fronting of a lot upon a navigable stream or bay often constitutes its chief value and desirability whether for residence or business purpose. The right of access to the property over the water, the unobstructed view of the bay and the enjoyment of the privileges of the waters incident to ownership of the bordering land would not in many cases be exchanged for the price of an inland lot in the same vicinity. In many cases doubtless the riparian rights incident to the ownership of the land were the principal if not sole inducement leading to its purchase by one and the reason for the price charged by the seller.
Although riparian rights are property, they are unique in character. The source of those rights is not found within the interest itself, but rather they are found in, and are defined in terms of the riparian upland. In most cases, therefore, it is not difficult to find that riparian rights are an inherent aspect of upland ownership and are not severable from it.
Thus, in the context of condemnation of property, we think the condemnor should be unable to reserve the riparian rights to the condemnee in the absence of an express bilateral agreement to do so with the condemnee. The actions of the Department in this case have, in effect, deprived petitioners of the basic rights which are included in the term "riparian rights." The condemnation context is distinguishable from the situation where two parties to a real estate transaction might choose to sever the riparian rights from the riparian lands and also provide those necessary additional rights which would enable the riparian right holder to actually benefit from those rights  i.e., an easement or right to enter the riparian lands. For this reason, we will not hold that riparian rights are never severable from the riparian lands. However, we must conclude that the act of condemning petitioners' lands without compensating them for their riparian property rights under these facts was an unconstitutional taking.
In reaching our conclusion, we have considered the applicability of section 197.228, Florida Statutes (1983), to the instant case. Section 197.228 provides in part:
(1) Riparian rights are those incident to land bordering upon navigable waters. They are rights of ingress, egress, boating, bathing and fishing and such others as may be or have been defined by law. Such rights are not of a proprietary nature. They are rights inuring to the owner of the riparian land but are not owned by him. They are appurtenant to and are inseparable from the riparian land. The land to which the owner holds title must extend to the ordinary high watermark of the navigable water in order that riparian rights may attach. Conveyance of title to or lease of the riparian land entitles the grantee to the riparian rights running therewith whether or not mentioned in the deed or lease of the upland.
The question of whether this statute applies to the case at bar turns on the threshhold issue of whether it is a tax law or property law. The statute contains language which seemingly prevents the separation of any riparian rights from the ownership of riparian upland. Such language, if applied to this case, would be inconsistent with generally accepted property doctrines and contrary to established case law in the state of Florida. See Burkhart v. City of Fort Lauderdale.
The Court, in Webb v. Giddens, 82 So.2d 743 (Fla. 1955), observed that this statute "is included in the chapter on taxation and finance" and expressed no opinion as to its applicability in a suit brought by a riparian owner seeking a declaration as to the right of State Road Department to obstruct navigable waters.
In McDowell v. Trustees of Internal Improvement Fund, 90 So.2d 715, 717 (Fla. 1956), we said this subsection of the statute "was appropriately included in the chapter on taxation, and it was apparently intended by the legislature to provide a guide for the benefit of tax assessors." This was quoted with approval in Adams v. Crews, 105 So.2d 584 (Fla. 1958).
*653 No case has ever held section 197.228 applicable as property law to riparian rights. Thus, we agree with the district court of appeal and hold that section 197.228 is a tax law and therefore not applicable to this case. See Maloney, Plager & Baldwin, Water Law and Administration § 34.3 (1968).
The second point raised by the petitioners is whether the state should have been permitted at trial to make certain promissory representations that they would or would not do certain things in the future which were not in the pleadings or construction plans offered in evidence. The petitioners assert that the damages caused by a project as contemplated by the construction plans in existence on the date of valuation and the pleadings govern the evidence of valuation and that representations of a purely promissory or speculative nature should not affect either the character or the extent of the damages the condemnor must pay as full compensation. We agree. When evidence in the form of plans and specifications is properly admitted for the purpose of providing a declaration of the manner in which the condemned property will be utilized, the Department should be bound by this evidence. Division of Administration, Department of Transportation v. Decker, 408 So.2d 1056 (Fla. 2d DCA 1981), review denied, 415 So.2d 1361 (Fla. 1982); Bryant v. Division of Administration, Department of Transportation, 355 So.2d 841 (Fla. 1st DCA 1978); Central & Southern Florida Flood Control District v. Wye River Farms, Inc., 297 So.2d 323, 327 (Fla. 4th DCA 1974), cert. denied, 310 So.2d 745 (Fla. 1975).
In summary we hold: (1) Riparian rights are property rights, incorporeal interests in real estate; (2) They may be separated from the upland by bilateral agreement to reserve them in a deed of conveyance or all or any interest in riparian rights may be transferred by voluntary act of the upland owner; (3) Section 197.228 is a tax law and not applicable; (4) Riparian rights cannot be severed by condemnation proceedings without the consent of the upland owner.
The other points raised by petitioners are without merit and we affirm the judgment of the trial court awarding $2,385 and $15,800, respectively, as the value of the land taken. The decision of the district is quashed and the cause is remanded to the district court with instructions to further remand the same to the trial court for the purpose of determining the just compensation due petitioners for riparian rights and severance damages.
It is so ordered.
ALDERMAN, EHRLICH and SHAW, JJ., concur.
BOYD, C.J., concurs in part and dissents in part with an opinion.
OVERTON and McDONALD, JJ., dissent.
BOYD, Chief Justice, concurring in part and dissenting in part.
I would quash the decision of the district court of appeal and remand with directions that petitioners be given a new trial on the question of the value of the property taken. The property owners are entitled to have the value of the property for which they are to be compensated determined by means of a jury trial from which improper and prejudicial testimony is excluded. Department of Transportation v. Nalven, 455 So.2d 301 (Fla. 1984).
I agree with the Court's conclusion that in the context of this case and condemnation proceedings generally, there can be no separation of riparian rights from the riparian lands being taken. Therefore the purported "reservation" of riparian rights to the owners having their riparian lands taken by the state was void and the owners must be compensated for that portion of the value of the lands taken attributable to their riparian character.
The majority wisely finds the words of Judge Hersey, written in special concurrence to the opinion below, persuasive on the issue of separation. There are compelling reasons for simply answering the certified question unequivocally in the negative. However, I am content with confining our *654 answer to the context in which the question arose. I see the majority's "holding" regarding separation by agreement as mere dicta.
In view of the Court's conclusion that there can be no reservation of riparian rights to the condemnees, we must also conclude that the testimony of the state's valuation experts at trial, having been based on an erroneous legal theory, was improper. As is briefly described in the opinion of the district court, the state's expert testified that there was to be no compensation for the loss of riparian rights, because riparian rights were not being taken. This erroneous testimony was clearly prejudicial and mandates a new trial.
The majority correctly concludes that it was also error to allow the state to present to the jury certain features of its future plans of a promissory or speculative nature, which served to diminish the character of the damages in the eyes of the jury. This error mandates a new trial.
I dissent to that portion of the Court's opinion approving the affirmance of the judgments for damages. Because of errors at the trial, the damages must be determined anew by means of a jury trial affording full protection to the petitioners' constitutional right to full compensation.