DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

KEVIN BROWN and
DAVID LeBLANC-SIMARD,

Appellants,

v.

TRAJANA NOEL THOMAS and
JOYCE J. THOMAS,

Appellees.

No. 2D2024-1282

_____

August 20, 2025

Appeal from the Circuit Court for Manatee County; Edward Nicholas, Judge.

Andrew J. Baumann, Robert P. Diffenderfer, and Aaron R. Modiano of Lewis, Longman & Walker, P.A., West Palm Beach, for Appellants.

Fred E. Moore of Blalock Walters, P.A., Bradenton, (withdrew after briefing); Rory B. Weiner of Rory B. Weiner, P.A., Brandon (substituted as counsel of record), for Appellees.

ROTHSTEIN-YOUAKIM, Judge.

Kevin Brown and David LeBlanc-Simard appeal a final judgment that appears to foreclose them from exercising certain of their riparian rights[1] along the Manatee River in order to preserve a preexisting dock

---

[1] "In Florida, riparian rights include '(1) general use of the water adjacent to the property, (2) to wharf out to navigability, (3) to have access to navigable waters and (4) the right to accretions.' " *Tewksbury v. City of Deerfield Beach*, 763 So. 2d 1071, 1071 (Fla. 4th DCA 1999)

owned by their neighbors Trajana and Joyce Thomas.[2]  Because the trial court misapplied *Hayes v. Bowman*, 91 So. 2d 795 (Fla. 1957), in determining the boundaries for the parties' exercise of those rights, we reverse.

Brown and LeBlanc-Simard brought the underlying action to quiet title to accreted lands claimed by the Thomases, to declare the boundaries of the other riparian rights among the parties,[3] and for a mandatory injunction requiring the Thomases to remove their dock and a portion of a fence.  The Thomases countered that neither Brown nor LeBlanc-Simard is entitled to accreted lands, nor is Brown entitled to any other riparian rights because his property does not abut the mean high-water line.  The Thomases also asserted that Brown and LeBlanc-Simard are barred by laches from seeking the dock's removal.

### *Accretion*

Following a bench trial, the trial court found that Brown's property (Lot 26) and LeBlanc-Simard's property (Lot 25)—like the Thomases' property (Lot 31)—indeed abut the mean high-water line of the Manatee River and therefore included riparian rights.  The Thomases do not challenge that determination on appeal.

Nor do they challenge the trial court's allocation of accreted lands. The court found that each property had enjoyed substantial accretion since original platting.  Accepting the methodology of Brown and

---

(quoting *Belvedere Dev. Corp. v. Dep't of Transp.*, 476 So. 2d 649, 651 (Fla. 1985)).

[2] The dock was already there when the Thomases bought their property in 2008, and Brown and LeBlanc-Simard did not purchase their properties until 2020 and 2018, respectively.

[3] The parties, however, ultimately directed the trial court not to draw the riparian line between Lots 25 and 26.

LeBlanc-Simard's surveyor, George Young, the court apportioned the accreted lands among the parties pro rata based on their respective lots' pre-accretion footage along the prior mean high-water line. The following picture shows the location of those lots on the Manatee River, how the court apportioned the accreted lands among the parties, and the location of the Thomases' dock (shown under Lot 31 and then extending into the river below the S48°30'13"E line):



### *The dock*

To determine his proposed boundaries for the parties' other riparian rights, Young used the same methodology that he had used to

apportion the accreted lands.  Specifically, Young explained that after he had first drawn a smoothed-out arc based on the geometry of the shoreline, he then identified a radial point in the river.  From that point, he drew lines

> to the original shoreline, the pre-shoreline before the accretion occurred, and where each property line had a common intersection with its neighbor. . . .  I've drawn that line from the center point of that arc all the way back to the [] boundary, before the accretion.  And then that becomes the basis, number one, of allocating the accretion to the individual lot owners all the way out to the current mean high-water line, which I measured, and from there all the way out to the radial point into the river, then becomes the riparian direction of each one of those individual accreted properties.

Young's proposed boundaries for the parties' other riparian rights are depicted above, extending out into the river from their respective lots.

No one disputes that Young followed a well-recognized methodology for apportioning riparian rights.  But when it came to imposing the boundaries of the parties' rights other than to accreted lands, the trial court abandoned the methodology that it had used to apportion accretion and instead drew a single riparian boundary with the sole purpose of protecting the Thomases' dock.  The following picture on the left shows what the court did, in contrast to the picture on the right, which shows what one would have expected based on the court's accretion determination:

4



The trial court appears to have come up with this hand-drawn line on its own—no expert or other witness supplied it. And as it candidly explained in its final judgment, "It would be inequitable to order the removal of the dock, and the Court has established the common riparian line between Lots 26 and 31 such that the dock does not encroach on Lot 26's riparian rights and thus, does not require removal." As directed by Brown and LeBlanc-Simard, the court did not draw any boundary dividing the remaining sliver of riparian area between Lots 25 and 26.

Having drawn the riparian line between Lots 26 and 31 so that the dock did not encroach, the trial court did not reach the Thomases' laches defense. The court also rejected Brown and LeBlanc-Simard's suggestions that it at least move the riparian line closer to the dock, or

5

that it instead allow the Thomases to repair the existing dock but not replace it.

We have carefully examined the record and find no indication that the trial court, in drawing the riparian line between Lots 26 and 31, considered the impact of that line on the ability of Brown or LeBlanc-Simard to build a dock, either individually or collectively, or to otherwise enjoy their riparian rights. Nor does the detailed final judgment include any consideration of those rights (other than to order the removal of a portion of the Thomases' fence on Brown's accreted lands).

## Discussion

In *Hayes*, 91 So. 2d at 801, the key Florida case on apportioning riparian rights, our supreme court started its analysis by noting that "[i]t is absolutely impossible to formulate a mathematical or geometrical rule that can be applied to all situations." That's because "[t]he angles (direction) of side lines of lots bordering navigable waters are limited only by the number of points on a compass rose" and "[s]eldom, if ever, is the thread of a channel exactly or even approximately parallel to the shoreline of the mainland." *Id.* These observations are vindicated in our case, because the upland shoreline of the three properties forms a roughly ninety-degree corner, with the Thomases' property and dock both facing south, while the shorelines of the Brown and LeBlanc-Simard properties generally face east at a near right angle.

Nonetheless, *Hayes* prescribed a general rule for apportioning riparian rights:

> [I]n any given case the riparian rights of an upland owner must be preserved over an area "as near as practicable" in the direction of the Channel so as to distribute equitably the submerged lands between the upland and the Channel. *In making such "equitable distribution" the Court necessarily must give due consideration to the lay of the upland shore line, the*

6

> *direction of the Channel and the co-relative rights of adjoining upland owners.*

*Id.* at 802 (emphasis added); *see also Johnson v. McCowen*, 348 So. 2d 357, 360 (Fla. 1st DCA 1977) ("When the general course of the shore curves or bends, two objects are to be kept in view; namely, to give each proprietor a fair share of the land and to secure to him convenient access to the water from all parts of his land by giving him a share of the outward line proportioned to a share of the line of the original shore owned by him.").

Because geographic realities necessitate a degree of equity in the apportionment of riparian rights, the Thomases argue that we must review the trial court's decision for an abuse of discretion and conclude that there was none. Brown and LeBlanc-Simard urge us instead to review the court's decision de novo as a question of law. At the end of the day, however, the standard that we formally invoke does not much matter because "[a trial] court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)); *see also Canakaris v. Canakaris*, 382 So. 2d 1197, 1202 (Fla. 1980) ("[W]here a trial judge fails to apply the correct legal rule . . . the action is erroneous as a matter of law. This is not an abuse of discretion. The appellate court in reviewing such a situation is correcting an erroneous application of a known rule of law.").

Here, the trial court undeniably considered the shoreline and the Manatee River's relevant characteristics in determining accretion—those factors were part and parcel of Young's methodology for apportioning the accreted lands. But when it came to setting the boundaries of the parties' other riparian rights (most notably the right to wharf out to navigability) through its hand-drawn line, the court ignored the geometry

7

of the shoreline and the river, instead latching solely onto the location of the Thomases' preexisting dock.

Hayes, however, does not permit such a singular focus. Although the dock was undoubtedly relevant to the Thomases' "co-relative rights" (the third factor under Hayes), neither the final judgment nor the trial court's posttrial oral pronouncement evince any effort to ensure that Brown and LeBlanc-Simard are likewise able to enjoy their riparian rights to the extent practicable. Instead, the trial court adopted a "first come first serve" approach, contra Bay Shore v. Steckloff, 107 So. 2d 171, 175 (Fla. 3d DCA 1958) (concluding that one upland owner is not given precedence over another upland owner based on who first exercises their rights), and then amplified the impact of that approach by specifying that its hand-drawn line survives the life span of the existing dock, cf. Williams v. River Bend of Cocoa Beach, Inc., 281 So. 3d 546, 549 (Fla. 5th DCA 2019) (affirming a trial court judgment allowing a mere de minimus encroachment to continue to exist but permitting only that encroachment's repair rather than replacement). Indeed, as drafted, the final judgment would even allow the Thomases to enlarge their dock or to move it closer to Brown's and LeBlanc-Simard's lots. We are hard-pressed to see the fairness in this result. See Lake Conway Shores Homeowners Ass'n v. Driscoll, 476 So. 2d 1306, 1309 (Fla. 5th DCA 1985) (reversing a trial court's apportionment of littoral rights as "clearly unfair" where the methodology used by the court effectively denied landowner access to a lake).

Accordingly, we conclude that the trial court's hand-drawn line ran afoul of Hayes, reverse the final judgment to the extent that it established the boundaries of the parties' riparian rights other than the right to accreted lands, and remand for the court to conduct a full

analysis of each of the three *Hayes* factors to determine the boundaries of those other rights.  The court may consider additional evidence in conducting this analysis.  We also direct the court to rule on the Thomases' laches defense.  *See Freed v. Miami Beach Pier Corp.*, 112 So. 841, 845 (Fla. 1927) (noting that when "structures or objects are put upon lands below high-water mark . . . any substantial encroachment upon the rights of others may be remedied . . . in due course of law at the instance of proper parties, but the rights of individuals to remedy may be waived by undue delay or laches").

Affirmed in part; reversed in part; remanded for further proceedings consistent with this opinion.


SILBERMAN and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.