500 So.2d 503 (1986)
TRAILER RANCH, INC., et al., Petitioners,
v.
CITY OF POMPANO BEACH, Etc., Respondent.
No. 68190.
Supreme Court of Florida.
December 24, 1986.
*504 Joe Easthope, Fort Lauderdale, and Thomas M. Ervin, Jr. of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for petitioners.
Donald C. Roberge, Pompano Beach, for respondent.
EHRLICH, Justice.
The District Court of Appeal for the Fourth District certified the following question as being of great public importance:
IS A CONDEMNING AUTHORITY WHICH SEEKS A PERMANENT UNDERGROUND UTILITY EASEMENT TOGETHER WITH THE NECESSARY ABOVE GROUND USES TO CONSTRUCT AND MAINTAIN SUCH UTILITIES, ENTITLED TO INTRODUCE INTO EVIDENCE THE PLANS AND SPECIFICATIONS REFLECTING THE DETAILS OF THE UTILITY PROJECT BEFORE THE JURY DETERMINING THE DAMAGES TO WHICH THE PROPERTY OWNER IS ENTITLED?
City of Pompano Beach v. Abe, 479 So.2d 863, 863 (Fla. 4th DCA 1985). We have jurisdiction, article V, section 3(b)(4), Florida Constitution, and answer the question in the affirmative.
In 1976 respondent (the city) commenced condemnation proceedings for a permanent utility easement under petitioners' property. The easement sought was for an eight-inch underground pipe which was part of a city sewer project. The Order of Taking granted the city, upon payment of $19,750 into the registry of the court, a perpetual underground utility easement and "temporary construction easements under, across and over" petitioner's property.[1]
Pursuant to a pretrial stipulation the parties moved the trial court to determine whether the easement taken must, as a matter of law, be considered the equivalent of a fee simple taking for purposes of determining just compensation. The trial court ruled that the easement taken was tantamount to a taking of the fee. The trial court also granted petitioners' Motions In Limine to exclude the city's appraiser from testifying at trial and exclude the city's plans for the sewer project and related engineering testimony. At trial the city proffered, outside the presence of the jury, the plans and testimony. Consistent with these previous rulings, this evidence was *505 excluded by the trial court. Thus, the only testimony presented at trial was that of petitioners' appraiser who opined that the total value of the property taken was $400,000.[2] The jury returned a verdict of $200,000; the trial court granted petitioner's motion for judgment notwithstanding the verdict and granted judgment for $400,000 plus interest from the date of taking; attorney's fees and costs were also awarded to petitioners.
On appeal the Fourth District Court reversed and remanded for a new trial, reasoning that the city's plans and specifications as well as the engineering testimony should have been admitted into evidence "in order to determine the extent of [the] taking and the damages caused thereby." 479 So.2d at 863. Because of the disparity between the city's valuation of the easement taken and the award eventually entered by the trial court, and because of the "unsettled posture of appellate law," the district court certified the question now before us. Id.
The answer to the question before us is contained in this Court's opinion in Doty v. City of Jacksonville, 106 Fla. 1, 142 So. 599 (1932). There the plaintiff, the City of Jacksonville, commenced condemnation proceedings to acquire portions of two lots belonging to the defendant in order to widen a public street. The defendant attempted to introduce the city's plans and specifications into evidence but the trial court sustained the city's objection to their admission. In finding this error, we reasoned:
The purpose of this evidence was to show the grade of that portion of the street adjoining the defendant's property, which would have some bearing on the extent and amount of the damage, if any, which would be done to that portion of defendant's property which would be left after the condemnation proceeding.
106 Fla. at 2, 142 So. at 600.
The district court below found its decision in Central and Southern Florida Flood Control District v. Wye River Farms, Inc., 297 So.2d 323 (Fla. 4th DCA 1974), cert. denied, 310 So.2d 745 (Fla. 1975), to control the issue sub judice. We agree and consider Wye River Farms, which relied in part on Doty, to be the correct statement of applicable legal principles on the admissibility of a condemnor's plans and specifications in eminent domain proceedings. In that case the district court explained:
[P]lans and specifications for construction of a public project are admissible in evidence by either party... . Usually the condemnor possess [sic] the greater motive for offering plans and specifications since admission of such evidence provides a positive declaration of the manner in which the property will be utilized, which manner may not damage the remaining property according to the worst possible assumption or inflict the most serious damage the legal title acquired might imply. However, when such information is in evidence, the condemnor is bound thereby and the issues as to damages to the remainder are framed therein.
Id. at 327. The court in Wye River Farms explained that a condemnor is not required to have complete plans and specifications prepared in order to establish the public necessity for the taking. However, once that threshold requirement has been established and the question then becomes one of just compensation, either party may introduce such plans. Id. at 326. We find the court's reasoning persuasive:
Plans and specifications, and indeed any matter in explanation of the way in which the public project is to be constructed, are evidentiary in nature and, as such, may explain the manner in which the property acquired will be utilized.
Id. at 328.
Sub judice, we conclude that the trial court erred in two significant respects. *506 First, the trial court's preliminary ruling that the words "across, over and under" contained in the order of taking granted, as a matter of law, the condemnor the fee simple interest in petitioner's property was erroneous. The order evidences that the city was given this right in order to enter the property to construct, maintain and repair the underground pipe. It is clear from the order that the character of the estate acquired by the city was a perpetual utility easement, not a fee simple estate; petitioners, therefore, could legally continue to use the property in question in any manner so long as it does not interfere with the city's activities in the construction, operation and maintenance of its underground pipe.[3]See Jones v. City of Tallahassee, 304 So.2d 528 (Fla. 1st DCA 1974), cert. denied, 333 So.2d 21 (Fla. 1976).
Second, we agree with the district court below that it was error for the trial court to exclude the city's plans and specifications as well as the testimony of the city's engineer. As we have stated, such plans and testimony are evidentiary in nature and the city is entitled to present its planned uses for petitioner's property to the jury. Further, it is settled law in this state that once plans and specifications are properly admitted for the purpose of showing the manner in which the condemned property will be utilized, the condemnor is bound by this evidence. See Belvedere Development Corp. v. Department of Transportation, 476 So.2d 649, 653 (Fla. 1985), and cases cited therein. If, after damages are awarded for the taking, the condemnor fails to adhere to the binding plans, specifications and testimony as established at trial, the condemnee has a cause of action against the condemnor for additional damages. Mainer v. Canal Authority, 467 So.2d 989 (Fla. 1985); Department of Transportation v. Mobile Gas Co., Inc., 427 So.2d 1024 (Fla. 1st DCA), review denied, 437 So.2d 677 (Fla. 1983); Department of Transportation v. Decker, 408 So.2d 1056 (Fla. 2d DCA 1981), review denied, 415 So.2d 1361 (Fla. 1982); Wye River Farms.
Petitioners allege that Houston Texas Gas and Oil Corporation v. Hoeffner, 132 So.2d 38 (Fla. 2d DCA), cert. denied, 136 So.2d 349 (Fla. 1961), controls the issues sub judice. We disagree. Hoeffner and its progeny Department of Transportation v. St. Regis Paper Co., 402 So.2d 1207 (Fla. 1st DCA 1981), review denied, 412 So.2d 464 (Fla. 1982); and Smith v. City of Tallahassee, 191 So.2d 446 (Fla. 1st DCA 1966), represent salient principles of law but are factually inapposite to the case before us. Simply stated, Hoeffner stands for the proposition that the condemning authority may not present testimony to the jury concerning a condemnor's nonobligatory, permissive policy of allowing the condemnee to continue certain uses of the taken property. Allowing this type of permissive policy to be presented to the jury for determining the extent of damages is misleading because it suggests that the condemnee retains a greater property interest than he actually does, as the policy may change at the condemnor's will at any time in the future. See also Peebles v. Canal Authority, 254 So.2d 232 (Fla. 1st DCA 1971). In St. Regis Paper, the condemnor, the Department of Transportation, attempted to introduce certain plans and testimony showing that, after the condemnor widened a highway on the condemnee's property, the condemnee would still have access to certain of his remaining lands. The district court upheld the trial court's exclusion of this evidence because the plans themselves failed to show any access to the landowner's remaining property. Further, there was no authority conferred on any *507 testifying official to make binding commitments for the condemnor. The district court correctly held that, absent a binding witness or specific plans, the trial court did not err in denying admission of this evidence. 402 So.2d at 1208. In Smith v. City of Tallahassee, the condemnor sought a perpetual easement on the condemnee's property for a thirty-foot wide drainage ditch. The trial court allowed the condemnor to ask a line of questions on cross-examination of the landowner's expert designed to show that if the property owners bridged across the ditch they would have access to their remaining property; therefore, the owners would suffer no severance damages. The trial court was of the view that the owners would have an absolute right to bridge across the ditch, but the district court correctly found that the terms of the easement, permanently granting the condemnor rights over, above and under the ditch would have prohibited the landowner from gaining access to his remaining lands without the consent of the city which could be withdrawn at any time. 191 So.2d at 448. In other words, the landowner's ability to have access to the remainder of his lands would be totally contingent on the condemnor's benevolence. The district court correctly found that by allowing this line of questioning, the jury was misled as to the extent of damages to the remainder of the landowner's property. Id.
We find that the jury was similarly misled sub judice. By excluding the plans and engineering testimony, which would be binding on the city,[4] the city was deprived of an opportunity to show the exact manner in which the taken property would be utilized. Instead, the jury was allowed to hear only the condemnees' appraiser testify on the basis of the questionable proposition that the city's ability to enter the property to repair or maintain the underground pipe would prohibit the landowner from any use of the land above the pipe, and would effectively eliminate the landowners' highway access. At the new trial petitioners can of course assert that the worst possible damage will happen to their property. By this same reasoning the city should be allowed the opportunity to show that the project will result in less than the worst possible assumption. The city's position will not be based on some benevolent permissive policy, but will instead be based on specific plans and a binding witness.
A condemning authority exercising the power of eminent domain is not permitted to acquire a greater quantity of property or interest therein than is necessary to serve the public purpose for which the property is acquired. Canal Authority v. Miller, 243 So.2d 131, 133 (Fla. 1970). Article X, section 6 of the Florida Constitution provides that a landowner whose property is taken for a public purpose is entitled to full compensation for what is actually taken. By excluding the city's evidence sub judice, the trial court arguably violated both of these principles by forcing the city to acquire and pay for a fee simple estate when an easement was all that was necessary to serve the public purpose. Instead of being fully compensated for the easement taken, the landowners have received a windfall at the expense of the public.
Accordingly, we answer the question in the affirmative and approve the decision of the district court below.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON, SHAW and BARKETT, JJ., concur.
NOTES
[1] The order demonstrates that under the city's original plan the underground pipe would have bisected petitioners' property. Petitioners convinced the original trial court judge that minimum inconvenience and economic impact would result from rerouting the underground pipe so that it traversed the perimeter of petitioners' property. Before a new trial court judge petitioners successfully contended that the new location of the pipe along with the city's right to enter the property for maintainance and repair was the equivalent of a fee simple taking.
[2] This valuation was based, in part, on the premise that the new location of the pipe effectively eliminated highway access to the remainder of petitioners' property, (i.e., severance damages).
[3] The record reflects that petitioners have continued to use the property in question in substantially the same manner as they did before the installation of the city's underground pipe. The fact that the city may enter the property in the future and, therefore, temporarily disrupt petitioner's use, is a factor petitioner may properly argue to the jury on the question of damages. However, the city's simply having the right to enter the property for maintenance and repair of its underground pipe does not, as a matter of law, transform a perpetual underground easement into a fee simple estate.
[4] There is nothing in the record to indicate that the plans lacked the requisite specificity or that the engineer was without authority to speak for the condemnor.