PETERSON, J.
Brevard County (Brevard) obtained an order of taking for 240 acres of property owned by A. Duda & Sons, Inc. (Duda), for the construction of artificial wetlands to be used as a disposal and treatment area for Brevard’s South Central Regional Waste-water Treatment Facility. The additional wetlands were required to enhance the facility’s disposal capacity and to facilitate a plan to increase the capacity from three million gallons to five and one-half million gallons per day. The operation of the facility allows partially-treated wastewater to flow into the artificial wetlands system, and then drain into a canal known as the “4-Mile Canal” which finally empties into Lake Winder, a part of the St. Johns River system. The 4-Mile Canal is owned and operated by Duda, who uses it to drain surface water runoff from operations on its 38,000 acre Cocoa Ranch.
After the order of taking had been entered for the 240 acres of created wetlands, Brevard filed an amended petition to correct the oversight that it lacked an easement to connect the created wetlands to Lake Winder. The amended petition sought an easement over more of Duda’s land and Duda’s privately owned 4-Mile *478 Canal for the transmission of its treated effluent.
Duda raised its concern about the pollutants that Brevard would discharge with its effluent into the 4-Mile Canal. Duda presented evidence that governmental regulatory agencies were considering imposition of pollutant load limitations (PLURGS[1] and TMDLS[2]) on Lake Winder within the following five years. Those limitations could substantially impact Duda’s operations and future development of its Cocoa Ranch in that Brevard’s discharge of its pollutants through the use of the easement would reduce the availability for Duda’s discharge.
Duda estimated that, under the worst case scenario, the value of an easement obtained by Brevard with unrestricted rights would be six million dollars. In order to reduce those damages, Duda proposed that restrictions on the use of the easement be placed in the supplemental order of taking. The parties were able to agree upon some of the language in furtherance of the goal to reduce damages and the language was included as paragraph five of the supplemental order. Disagreeing on language to be included in paragraph six of the order, the parties each submitted proposals to the court and the court selected Duda’s proposal. Bre-vard’s appeal of the order is focused upon that paragraph six.[3]
We agree with Brevard that the trial court exceeded its authority by including language in paragraph six of the order that requires Brevard to perform future obligations beyond the plans, specifications, and testimony as established at trial. The supplemental order of taking requires Brevard to take steps in the future to reduce or eliminate contaminants to meet unascertained standards. The requirements exceed the plans, specifications and testimony presented at the hearing on the order of taking, and attempt to impose contractual obligations on Brevard in favor of Duda in the absence of a contractual agreement. This goes beyond the determination of a good faith deposit for contemplated damages.
In Trailer Ranch, Inc. v. City of Pompano Beach, 500 So.2d 503, 506 (Fla.1986), the supreme court stated:
[I]t is settled law in this state that once plans and specifications are properly admitted for the purpose of showing the manner in which the condemned property will be utilized, the condemnor is bound by this evidence.... If, after the damages are awarded for the taking, the condemnor fails to adhere to the binding plans, specifications and testimony as established at trial, the condemnee has a cause of action against the condemnor for additional damages.
We interpret the reference to binding plans, specifications and testimony to be of a technical nature and so certain that a subsequent variance from them can be ascertained and additional damages sought. The provisions of paragraph six of the supplemental order of taking that have been imposed vary from that concept. For example, the parent tract has not yet been determined, yet the order includes all of the Cocoa Ranch’s 38,000 acres. The highest and best use of the land has not yet been determined, yet the order presupposes a wide latitude of use. Obligating Brevard to take steps as necessary to avoid reduction in Duda’s use of its lands because of an uncertain future occurrence completely misses the mark as a plan or specification that is ascertainable.
Equally objectionable from the con-demnee’s perspective is Brevard’s proposed version of paragraph six. It is transparent in its attempt to discount the just compensation ultimately to be award *479 ed for the taking and could not be characterized as a plan or specification. The terms “reasonable steps,” “mitigate,” “material,” and “abutting lands” are invitations to future litigation. Time periods to take those actions are not defined. Brevard’s version also presupposes that the highest and best use of the abutting lands, the size of which has not yet been determined, is agricultural.
The condemnee is entitled to just compensation now for the current taking, not vague promises to act in the future to cure future problems in an attempt to limit compensation.
Because of the uncertainty that the deletion of paragraph six would have upon the Supplemental Order of Taking as a whole, we vacate the entire order and remand for entry of an order that reflects that which the county requested in its supplemental petition, together with its plans and specifications and expert testimony, without adopting what the county would like to undertake in the future to cure its deleterious affect on Duda’s parent tract by discharge of pollutants. In doing so, Duda can assert that the worst possible damage will be suffered by the remainder. The county can, of course, show that their discharge will result in less than the worst possible assumption.
The trial court and the parties should be commended for their attempt to resolve the complexities that emerging environmental regulations have introduced into this eminent domain action. The parties are encouraged to further attempt to find mutually agreeable language for adoption by the court.
ORDER VACATED; REMANDED.
W. SHARP and GRIFFIN, JJ., concur.
APPENDIX A: Included in the Supplemental Order of Taking
5. The legal interest to be acquired in the real property described in Exhibit
“A-l” shall be a non-exclusive drainage easement over the existing canal known as the “4-Mile Canal” to be used solely for either:
a. the conveyance of treated effluent discharged from the Wetlands Disposal System to be constructed on the 177 acres described in Exhibit “B” as “Area 4”, or as further expanded to the forty acres, more or less, described in Exhibit “B” as “Area 2”; and
b. the conveyance of stormwater discharged from the wastewater treatment plant site located on thirty-eight acres described in Exhibit “C”, or as further expanded to the forty acres described in Exhibit “B” as “Area 2”; and
c. the intake of water from the “4-Mile Canal” for further treatment as described in paragraph 6.
Petitioner’s use of the non-exclusive easement to serve the Wetlands Disposal System as described in Exhibit “A-l” shall be limited to and in accordance with the FDEP domestic Wastewater Facility Permit No. FL0102679-001 and the FDEP Environmental Resource Permit 05-124901-001, including the construction specifications and operation/discharge levels described in those permits as to both water quantity and water quality, or future modifications of those permits which would expand the effluent disposal capacity of the Wetlands Disposal System located on the property described in Exhibit “B” as “Area 4” and “Area 2.” Defendant, A. Duda & Sons, Inc., does not waive any rights it has to challenge such future modifications of those permits as the owner of either the underlying fee of the 4-Mile Canal or adjacent lands other than waiver of any challenge of Petitioner’s title to a legal interest in a nonexclusive easement as set forth in the Supplemental Order of Taking. Among the rights reserved to the underlying fee owner are the following, provided that the flow of water from the Wetlands *480 Disposal System as provided herein is not blocked or terminated:
(1) the right to install drainage pipes in the canal and to fill the canal to cover the pipes;
(2) the right to construct alternate means of conveyance such [sic] a system of small ponds or lakes;
(3) the right to relocate the canal and easement;
(4) the right to cross over, through or under the easement area, including right to build roads or bridges for such purposes;
(5) the right to use or continue to use the 4-Mile Canal and lands described in “A-l” for any lawful use or purpose whatsoever, including, but not limited to, any and all drainage purposes (conveyance, detention, treatment, etc.) whether in connection with agricultural production, land development, or otherwise;
(6) the right to continue to use any culverts, structures or other improvements in the easement area as of the date of taking; or
(7) the right to withdraw water from the 4-Mile Canal.
6. Petitioner shall take steps as necessary to avoid any reduction in the ability of A. Duda & Sons, Inc. to use its lands for agricultural production, land development and other commercially reasonable uses, specifically including without limitation, cattle production, sod cultivation, vegetable cultivation, and residential, commercial and industrial development, as a consequence of any effect on water quality in the 4-Mile Canal resulting, directly or indirectly, from the operations of the Wetland Disposal System. This requirement shall apply under any existing or future governmental regulations which have the direct or indirect effect of restricting the use of land owned by A. Duda & Sons, Inc., or subsequent owner of land, including but not limited to Pollutant Loading Reduction Goals (“PLURG”) which may be established by the St. Johns River Water Management District, or Total Maximum Daily Loads (“TMDL”) which may be established by the Florida Department of Environmental Protection. Should steps become necessary, they shall include but not necessarily be limited to, reduction of pollutant loads being discharged from the Wetland Disposal System, even if that requires the installation and operation of additional treatment facilities, such as additional contaminant removal equipment or post-treatment aeration equipment. Provided, however, that Petitioner is required hereby to take such steps only to the extent necessary to eliminate the water quality effects attributable to the operations of the Wetland Disposal System, and Petitioner is not required hereby to take such steps to offset or eliminate the water quality effects of other discharges or land uses, or to improve the ambient water quality of the 4-Mile Canal. If in the event that Petitioner fails to take such steps, or such steps do not entirely eliminate the water quality effects of the Wetland Disposal System adversely impacting A. Duda & Sons, Inc.’s ability to use its lands, then A. Duda & Sons, Inc. will have a cause of action for additional damages in eminent domain, both real property and business, to the extent such damages, if any, are caused by the unmitigated water quality effects resulting from the operations of the Wetlands Disposal System. Nothing herein shall be construed as an admission per se of Brevard County that the operation/discharge levels from the Wetlands Disposal System will materially or adversely impact A. Duda & Sons, Inc. or that A. Duda & Sons, Inc. is entitled to additional damages, real property or business, in the event A. Duda & Sons, Inc. pursues a claim under this paragraph. Further, Brevard County reserves and does not waive any defenses which may be available at the time of the entry of this *481 Supplemental Order of Taking or at the time the cause of action accrues, including setoff by enhancement or special benefits. Likewise, A. Duda & Sons, Inc. reserves and does not waive any objection based on fact or law that such defenses are lacking, including setoff by enhancement or special benefits.
APPENDIX B: Brevard County’s proposed version of paragraph six
6. If, under existing or future governmental regulation, the operation/discharge levels of the Wetlands Disposal System would cause Defendant, A. Duda & Sons, Inc., to suffer a reduction in phosphorus or nitrogen loading allocation sufficient to materially and adversely impact the use of its abutting lands for agricultural production, the Petitioner will take reasonable steps to mitigate its phosphorus or nitrogen discharge from the Wetlands Disposal System to the extent necessary to eliminate any material and adverse impacts on the agricultural production of A. Duda & Sons, Inc. In the event that such reasonable steps do not eliminate the material and adverse impacts, if any, on A. Duda & Sons, Inc., then A. Duda & Sons, Inc. will have a cause of action for additional damages in eminent domain, both real property and business, to the extent such damages, if any, are caused by the unmitigated material and adverse impacts, if any. Nothing herein shall be construed as an admission per se of Brevard County that the operation/discharge levels from the Wetlands Disposal System will materially or adversely impact A. Duda & Sons, Inc. or that A. Duda & Sons, Inc., is entitled to additional damages, real property or business, in the event A. Duda & Sons, Inc. pursues a claim under this paragraph. Further, Brevard County reserves and does not waive any defenses which may be available at the time of the entry of this Supplemental Order of Taking or at the time the cause of action accrues, including setoff by enhancement or special benefits. Likewise, A. Duda & Sons, Inc. reserves and does not waive any objection based on fact or law that such defenses are lacking, including set-off by enhancement or special benefits.

. PLURG—Pollutant Loading Reduction Goals.

. TMDL—Total Maximum Daily Loads.

.Paragraph five and both versions of paragraph six are fully set forth in the appendix.