[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16402

_____

D.C. Docket No. 8:13-cv-03170-JDW-MAP

PAUL CHMIELEWSKI, et al.,

Plaintiffs-Appellees,

versus

THE CITY OF ST. PETE BEACH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 16, 2018)

Before ED CARNES, Chief Judge, and NEWSOM and SILER,[*] Circuit Judges.

SILER, Circuit Judge:

In this appeal of an inverse condemnation action, Defendant-Appellant the City of St. Pete Beach ("the City") challenges a jury verdict in favor of Plaintiffs Katherine A. Chmielewski and Paul Chmielewski, as personal representative of the estate of Chester Chmielewski ("the Chmielewskis"). The underlying dispute involves a beachfront parcel, owned by the Chmielewskis, which experienced significant public usage. At trial, the jury found that the City encouraged and invited access by the general public, causing a seizure of the Chmielewskis' residential property and a taking of their beach parcel. After trial, the district court denied the City's motions for judgment as a matter of law and for a new trial. For the following reasons, we AFFIRM.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The beachfront property at issue in this case is located in the Don CeSar Place Subdivision in St. Pete Beach, Florida. The subdivision includes two blocks—Block M and Block N—that run parallel to the Gulf of Mexico. Between Block N to the north and Block M to the south stands the Don CeSar Hotel ("the Hotel") and the Hotel's privately-owned beach property. The Chmielewskis' home sits adjacent to Block M, three lots south of the Hotel. They purchased this lot in

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

2

1972, and as part of a 1975 insurance settlement, they acquired title to the beachfront portion of Block M contiguous to their residence, confirming that their property extended across Block M to the mean high water line ("MHWL") of the Gulf. This property—the "beach parcel"—is approximately 300 feet deep (east-west) and includes 50 feet of the Block M sidewalk, dunes, and sand. Under Florida law, the beach area between the water and the MHWL is available for public use, regardless of ownership in the Subdivision.

### *Chmielewskis' Ownership Rights*

In 2006, the Chmielewskis initiated a quiet title action against the City, the Hotel, and the Don CeSar Place Property Association to confirm their ownership of the beach parcel. The Chmielewskis obtained partial summary judgment in 2008, establishing their fee simple ownership in the residential lot and in the contiguous strip of beach parcel, subject to a 1925 plat restriction. The restriction provides that all Don CeSar Subdivision owners retain their right to use Block M, including the Chmielewskis' beach parcel, for "beach and bathing purposes."[1] The plat also prohibits building any structure on Block M, including on the Chmielewskis' beach parcel. As part of a settlement in the quiet title action, the City agreed that

---

[1] A private sidewalk runs north-south, the length of Block M, and parallel to dunes, sand beach, and the Gulf of Mexico. There was no dispute that this sidewalk is part of Block M, and Don CeSar Subdivision owners, their family, friends, and guests have the right to use this sidewalk and traverse all of Block M.

3

its ownership of five lots in the Subdivision did not give the general public the right to use Block M, including the Chmielewskis' beach parcel.

The original subdivision developer's residence adjoined Block M, just north of the Chmielewskis' property. During World War II, the federal government acquired that land, known as the Don Vista property. In 1975, it deeded this property to the City with the requirement that the lot ("the mini-park") could not be used for public beach access.

### City's Renovation of the Don Vista Property

From 2003 to 2005, the City used a federal grant to renovate the developer's residence—the Don Vista Building—and turn it into a community center. As part of those renovations, the City beautified the mini-park, installed benches, and cleared a direct public access path from the mini-park across Block M to the Gulf. For good measure, the City also cleared out the overgrowth on the Block M sidewalk behind the Chmielewskis' house. At both the north and south ends of Block M, the City posted large, circular signs with the City's emblem stating "Beach Access." These signs were visible to passing motorists on El Centro Street.

The City also cleared and improved the parking lot next to the Don Vista building, grassed and landscaped the area, and removed the fencing around the parking lot, as well as the chains and gate that blocked its entrance and had

4

previously prevented after-hours entry or use.  The City made the area attractive with convenient public parking to facilitate beach access.  In addition, the City installed metered public parking across the street (within half a block) for Block M beach access parking and publicly announced that it had provided parking to allow the public to use the Block M beach.  On its website, the City published a map showing public access to the Block M beach at the Don Vista Center.  At a public meeting, the City Manager proclaimed that the City had invested lots of money to have a beautiful center and needed to put it to full use by having the visiting public use the Block M beach.

### City's Zoning Maps and Access to Beach Parcel

While the City was renovating the Don Vista Center, it also zoned and mapped Block M, including the Chmielewski beach parcel, as "recreation open space/public park."  This designated the property as a public beach for public use, inconsistent with the Chmielewskis' private ownership rights.  A former director of planning testified that the City's zoning designation for Block M meant that it was for public use, including the dunes area, and he considered that area to be public.  This former city planner also testified that he frequented the Block M beach as a private citizen, parking his car at the Don Vista facility and using the beach access from there.  He believed that the Block M beach was public and that he was allowed to go there and engage in normal beach activities.  He traversed all over

Block M, observed other individuals coming and going through the property, and saw nothing to discourage these actions.

After the renovations, the City was motivated to encourage use of the Don Vista Building and its amenities. The City also entered into an agreement with the SunTan Art Center, a 501(c)(3) nonprofit organization, to operate the Don Vista Building as a community art center. The facility offered arts and crafts, yoga, art exhibits, and art sales. On Sundays, the Suntan Art Center hosted a flea market from 10:00 a.m. to 3:00 p.m.

### *Trespassers on the Chmielewskis' Beach Parcel*

At trial, witnesses testified that before the City's renovations, the Chmielewskis' property and area around it "was quiet, serene, pleasant and peaceful, with only an occasional neighbor coming to the beach and not much foot traffic or heavy use." However, after the renovations, members of the public regularly trespassed onto the Chmielewskis' property, cutting through or walking along the side of their residence from the public parking areas. People also walked up the private sidewalk in front of their house and over dunes, or from the mini-park over the dunes and across to the Chmielewskis' beach parcel. On weekends and holidays, beachgoers flocked to Block M in large numbers and onto the Chmielewskis' beach parcel, often coming down either end of Block M where City signs stated "Beach Access."

The Chmielewskis believed the people coming onto their property were members of the general public, not subdivision residents who had a legal right to access the beach parcel. Having lived in the subdivision for forty-one years, the Chmielewskis knew their neighbors and did not recognize the people trespassing on their beach property. They testified that Don CeSar residents "generally walked to the beach for a short time; unlike the persons using Block M, they did not drive there, park in the Don Vista lot or at City parking meters, bring tents, coolers or lots of paraphernalia, stay all day or into the night, or come in large numbers." When the Chmielewskis spoke with people they encountered on their beach parcel, some said they were from out of town and others refused to answer questions.

When Mr. Chmielewski called the City about unauthorized persons on his beach parcel, the City declined to enforce its trespassing laws. Instead, when Mr. Chmielewski placed lawn furniture on the private sidewalk in an attempt to block the public from walking across his beach parcel, City police removed the furniture and threatened to arrest him.

The City also facilitated public use of Block M. The City Manager said people who used the Don Vista property could use Block M for a wedding. And the Chmielewskis often noticed nuptials on the beach parcel. The City held public events on Block M. It organized a large wiffle ball tournament in 2009 that occurred along Block M, including the beach parcel. Several hundred individuals

attended the event.  A police officer told one Chmielewski family member that the event was private and made him leave his own property.

### The Chmielewskis' Lawsuit

In 2009, the Chmielewskis initiated the underlying lawsuit pursuant to 42 U.S.C. § 1983 alleging an unreasonable seizure of their property in violation of their Fourth Amendment rights and an unlawful taking of their beach parcel without full compensation in violation of the Florida Constitution.  The Chmielewskis alleged that the City had encouraged and invited the general public to use Block M and, as a result, they suffered a seizure of their residential property and a taking of their beach parcel.

Before trial, the district court denied the City's motion for summary judgment.  The court found there was evidence that the City had invited or facilitated members of the public to access Block M and that those individuals traversed, and thus interfered with the Chmielewskis' possessory interest in their beach parcel.  The district court further held that disputed issues of material fact existed as to whether the interference was meaningful, that is, sufficiently constant and physical to interfere with the Chmielewskis' possessory interests.

### Jury Verdict for the Chmielewskis

A four-day jury trial ensued.  At the close of the Chmielewskis' case, the district court denied the City's motion for a directed verdict.  The jury returned a

verdict for the Chmielewskis on both the federal § 1983/Fourth Amendment claim ("Count I") and the state inverse condemnation claim ("Count II").  On Count I, the jury awarded emotional distress damages as well as property-related damages, which the district court subsequently found were duplicative of the damages awarded for Count II.[2]  The jury awarded $1,489,700 on Count II—the exact amount that the Chmielewskis' appraiser testified represented "just compensation" for the value of the entire beach parcel plus the severance damages to the Chmielewskis' residential property.

After trial, the City moved for judgment as a matter of law and a new trial on both counts.  The district court held that the evidence was sufficient to support the jury's finding that the City had meaningfully interfered with the Chmielewskis' use and enjoyment of their property, in violation of the Fourth Amendment, and that the Chmielewskis had presented substantial evidence from which a reasonable jury could find that the City's statements and actions had demonstrated "more than a passive attitude" about the public's use of the Chmielewski property.  On the takings claim, the district court also held that the evidence supported a finding that the City:

---

[2] On April 19, 2017—after the completion of appellate briefing but before oral argument—the parties notified this court that Count I, the Fourth Amendment seizure claim, "has been settled and is no longer an issue in this appeal."  Accordingly, we have limited our analysis to Count II, the Florida takings/inverse condemnation claim.

> created a right of public access across Block M behind the Don Vista Center, so that a fair-minded person could conclude that the City's actions gave members of the public a permanent and continuous right to pass to and fro on Block M, so that the Chmielewski Block M beach parcel may be continuously traversed.

The district court also denied the City's request, in the alternative, to compel transfer of fee simple title to the Chmielewskis' beach property.

## STANDARD OF REVIEW

The City challenges two specific post-trial rulings of the district court: (1) the denial of its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, and (2) the denial of its motion for a new trial under Rule 59.

Under Rule 50, the "proper analysis is squarely and narrowly focused on the sufficiency of evidence," that is, whether the evidence is "legally sufficient to find for the party on that issue." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007). All reasonable inferences are drawn in favor of the nonmoving party, no credibility determinations may be made, the evidence may not be weighed, and evidence that the jury need not have believed is to be disregarded. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000). Such a motion is to be granted "only if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001).

10

A Rule 59 motion for a new trial based on evidentiary grounds is to be granted only if the verdict "is against the clear weight of the evidence or will result in a miscarriage of justice." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984) (quotation marks omitted). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001).

## DISCUSSION

As the Supreme Court has held, inverse condemnation cases inherently require a fact-intensive analysis. "No magic formula enables a court to judge, in every case, whether a given government interference with property is a taking." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012). The Supreme Court has drawn some bright lines, but "most takings claims turn on situation-specific factual inquiries." *Id.* at 32. In this appeal, the City argues that the inverse condemnation award must be reversed because there is no evidence of a taking under Florida law. Alternatively, the City contends that if the judgment is enforced, it should receive title to the beach parcel.

We are unpersuaded by the City's arguments. First, the evidence at trial supported the jury's finding that a physical taking occurred through the continuous

11

occupation of the Chmielewskis' property by members of the general public. Through its actions, the City encouraged public occupation by placing beach access signs, clearing vegetation, creating nearby parking spaces, hosting events at the property, and refusing to remove trespassers.  Second, there was no basis to grant a new trial.  Third, on the City's request for fee simple ownership of the beach parcel upon payment of the judgment—we hold that such relief is not warranted under Florida law and the district court did not abuse its discretion in denying the City's request to transfer title.

## I.    Permanent Physical Taking

Article X, § 6(a) of the Florida Constitution provides, "No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner . . . ."  This clause prohibits the government from taking private property for a public use without paying for it.  *Storer Cable T.V. of Fla., Inc. v. Summerwinds Apartments Assocs., Ltd.*, 493 So. 2d 417, 419-20 (Fla. 1986).  Because Florida follows federal takings law, we can look to cases brought under the Fifth Amendment to inform our analysis.[3]

A physical invasion constitutes a *per se* taking, in part because the "power to exclude has traditionally been considered one of the most treasured strands in an

---

[3] *See St. Johns River Water Mgmt. Dist. v. Koontz,* 77 So. 3d 1220, 1226 (Fla. 2011) (holding that the takings clause of the Fifth Amendment and the takings clause of the Florida Constitution are interpreted coextensively), *rev'd on other grounds*, 570 U.S. 595 (2013).

owner's bundle of property rights." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982). A plaintiff need not demonstrate direct government appropriation of private property to prove a taking. A taking also occurs when the government gives third parties "a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed." *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 832 (1987).[4]

Moreover, even a temporary or intermittent invasion of private property can trigger physical takings liability. *Ark. Game & Fish Comm'n*, 568 U.S. at 32 (holding government-induced recurrent floodings, even if temporary in duration, are not categorically exempt from Takings Clause liability).

### *City's Actions Encouraged Use of Beach Parcel*

In this case, the City encouraged public use of the beach parcel by:

- clearing the sidewalk abutting the Chmielewski residence and placing prominent "beach access" signs to encourage public use of the beach parcel;

- removing chairs the Chmielewskis had placed on the sidewalk in an attempt to block its use by the public;

- installing parking meters near the beach parcel and encouraging Don Vista Building patrons to access the beach after visiting the SunTan Arts Center;

- allowing weddings and other public events to be held on Blocks M and N;

---

[4] In *Nollan*, the Supreme Court held that the government could not take an easement for the public to cross a privately owned beach parcel without paying for it. 483 U.S. at 831. Even though "no particular person [wa]s permitted to station himself permanently upon the premises," the taking of "a permanent and continuous right to pass to and fro" across privately owned beach property constituted a "permanent physical occupation" and a *per se* taking. *Id.* at 831-32.

13

- using Block M for a July 4th celebration, even after the property owners in the subdivision voted to deny the City's request to use the property;

- publicly using Lot M for the mayor's charity wiffle ball tournament and having police threaten to arrest Mr. Chmielewski when he objected; and

- taking the public position, through its City Manager, that anyone authorized to use the Don Vista Center could use Block M, notwithstanding the City's concession in the 2008 quiet title settlement agreement that members of the general public would not be allowed to use Block M.

Each of these actions resulted in frequent public use of the beach parcel. In light of these facts, it cannot be said that the evidence was "so overwhelmingly in favor of the [City] that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks*, 256 F.3d at 1246.

The City points to the district court's statement that "[t]he City has never asserted ownership or exclusive control over that strip owned by Mrs. Chmielewski [the beach parcel]." Yet ownership and exclusive control are not necessary elements for a takings claim. *See Loretto*, 458 U.S. at 427 n.5 (providing that a physical taking occurs when government "deliberately brings it about that . . . the public at large regularly use or permanently occupy space or a thing which theretofore was understood to be under private ownership"); *Rubano v. Dept. of Transp.*, 656 So. 2d 1264, 1267 (Fla. 1995) (recognizing a taking if the government "by its conduct . . . has effectively taken" private property).

At trial, the Chmielewskis presented sufficient testimony and evidence to show that the continuous public trespassing and occupation of their property was

14

the natural and intended effect of the City's actions. Moreover, the agreed-upon jury instruction stated that the City is responsible for a public occupation taking if "actions attributable to the government, result in a permanent physical occupation of the property by the government itself or by others."

Denying post-trial relief, the district court found the evidence could support a finding by a reasonable jury that the City "authorized or encouraged constant physical occupation of the Chmielewskis' property by the public." This finding alone is enough to hold the City liable for a physical taking. *Nollan*, 483 U.S. at 832. The City's actions, therefore, imposed a de facto public access easement on the Chmielewskis' property.

## II.    Motion for New Trial

The district court denied the City's Rule 59 motion for a new trial, holding that "the jury's verdict on liability on both Counts was supported by sufficient evidence, including reasonable inferences drawn from the evidence. The jury's verdict is not contrary to the great weight of the evidence." Nonetheless, the City asks us to reverse, arguing that the "the great weight of the evidence does not support the jury's verdict on either claim." We are unpersuaded by this argument. The standard of review on a motion for a new trial is abuse of discretion. *Wolff v. Allstate Life Ins. Co.*, 985 F.2d 1524, 1528 (11th Cir. 1993). For the reasons articulated above, there is no basis to disturb the jury's verdict.

15

### III.    Transfer of Fee Title

In its post-trial motions, the City—for the first time—asked the district court, in the alternative, to transfer title to the Chmielewskis' beach parcel. Citing no authority and providing no explanation or analysis, the City raised the following one-sentence request for relief in the final paragraph of its twenty-five-page motion: "Finally if any amount is awarded for Count II (the takings claim), the CITY requests that title to the pathway and the beach parcel be transferred to the CITY." In a footnote, the district court summarily addressed and denied the City's "transfer of title" demand, ruling that "[i]n the final sentence of the motion, the City requests that title to the pathway and beach parcel be transferred to the City if damages are awarded for Count II, but provides no authority for this request. It is therefore denied."

Likewise, we are not swayed by the City's argument that title to the beach property should transfer so as to prevent a "windfall at the expense of the public." The City claims it would be inequitable for the Chmielewskis to retain fee title when the jury found the City had affected a physical taking of the entire beach parcel and had awarded damages for the full value of the property. Yet in returning a verdict for the Chmielewskis, the jury simply found that the City had taken for itself, or for the public, "a permanent and continuous right to pass to and fro" over the property. The district court agreed, denying the City's Rule 50

16

motion and holding that a reasonable jury could find, as this jury had, that "the City's actions gave members of the public a 'permanent and continuous right pass to and fro'" on the beach parcel.  This is in the nature of an easement.  *See Nollan*, 483 U.S. at 827-28, 831; *Loretto*, 458 U.S. at 433.  It is not title ownership.

Under Florida law, the taking of an easement may, in some cases, amount to the taking of the full value of the fee with resultant severance damages, but "naked fee title" still remains in the property owner.  *Smith v. City of Tallahassee*, 191 So. 2d 446, 448 (Fla. Dist. Ct. App. 1966).  As the Chmielewskis observed in supplemental briefing, "[i]f the taking included legal title, the City arguably could erect rest shelters, widen the sidewalk across the Chmielewskis' property, alter the terrain on the dunes, or remove the Chmielewskis['] narrow pathway across the beach parcel toward the water."

Moreover, Florida law provides that the City "is not permitted to acquire a greater . . . interest [in condemned property] than is necessary to serve the public purpose for which the property is acquired."  *Trailer Ranch, Inc. v. City of Pompano Beach*, 500 So. 2d 503, 507 (Fla. 1986).  The one and only public purpose the City ever asserted for what it did to the Chmielewskis' property was the need to provide public access to the beach.  Because existing plat restrictions prevented the land in question from being developed, the City needed nothing more than a public easement across the land to accomplish its goal of beach access.

17

Finally, the jury's award of inverse condemnation damages was based on an appraisal by the Chmielewskis' expert who used a "before and after" approach to determine the loss of value to the Chmielewskis' property as a result of the easement-type taking. The appraiser's estimate was not introduced as a market valuation of the fee simple estate.

Therefore, we affirm the district court's ruling denying the City's request to transfer title of the beach parcel. However, in the interest of justice, we hold that the City has paid for, and is entitled to, a permanent easement across the Chmielewskis' beach property for the benefit of the public. We direct the district court to amend its judgment to reflect this permanent easement.

**AFFIRMED**.